**2022 UT App 42**

## THE UTAH COURT OF APPEALS

PEGGY ZAZZETTI,
Appellant,
*v.*
PRESTIGE SENIOR LIVING CENTER LLC AND
ACTION SNOW PLOW AND LAWN CARE INC.,
Appellees.

Opinion
No. 20200357-CA
Filed March 31, 2022

Third District Court, Silver Summit Department
The Honorable Kent R. Holmberg
No. 170500337

Daniel F. Bertch and Caleb Bertch,
Attorneys for Appellant

Jeremy S. Stuart and Nathanael J. Mitchell, Attorneys
for Appellee Prestige Senior Living Center LLC

Joseph E. Minnock, Attorney for Appellee
Action Snow Plow and Lawn Care Inc.

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HARRIS, Judge:

¶1     Peggy Zazzetti was injured after she slipped and fell on a
patch of ice at her apartment complex. She sued the owner of the
complex as well as a snow removal company the owner had
hired. Prior to trial, pursuant to a summary judgment motion,
the trial court dismissed the snow removal company from the
lawsuit. And after a three-day trial, a jury found that the owner
was not at fault for Zazzetti's injuries. Zazzetti now appeals,
asserting that the court should not have dismissed the snow

removal company from the lawsuit, and that the jury's verdict was the result of various errors on the part of the court. We affirm.

BACKGROUND

¶2 In 2013, Zazzetti moved into an apartment at the Prestige Senior Living Center (Prestige). Zazzetti selected Prestige, as opposed to other housing options, because Zazzetti was disabled and Prestige billed itself as a "Low Income Housing Tax Credit Project" in which only people "62 and older or disabled" were allowed to live. Zazzetti and Prestige signed an apartment rental agreement—a form document drafted by Prestige—that, among other provisions, contained this language: "Tenant . . . agrees to keep snow off stairs and walks in the winter." In this opinion, we refer to this language as "the Snow Removal Provision."

¶3 In January 2017, Zazzetti walked her boyfriend to his car following a visit and, after he drove away, as she was returning to her apartment, she slipped and fell on the snowy and icy sidewalk leading from the parking lot to the building. The fall caused an injury to her left knee that later required surgery.

¶4 Zazzetti subsequently sued Prestige, asserting claims of negligence, breach of the implied warranty of habitability, and breach of contract. In its answer, Prestige denied all liability and gave notice that "it intend[ed] to apportion fault" to Action Snow Plow and Lawn Care (Action), a company it had hired to remove snow at the apartment complex. In response, Zazzetti amended her complaint, this time including claims against Action that were identical to the claims she had asserted against Prestige.

¶5 Later, after discovery, Prestige and Action both filed motions for summary judgment. In its motion, Prestige argued, in part, that it had satisfied its duty to Zazzetti and that

Zazzetti's own failure to comply with the Snow Removal Provision had contributed to her injuries. For its part, Action argued, among other things, that it was "an independent contractor who owe[d] no direct duty" to Zazzetti. The trial court denied Prestige's motion for summary judgment, but granted Action's, dismissing it as a party from the case.

¶6 Zazzetti then filed a motion asking the court to forbid Prestige from making any reference to the Snow Removal Provision during trial, arguing that the provision was unconscionable and irrelevant. Prestige resisted the motion, apparently wanting to keep the door open to arguing, at trial, that the accident was at least partially Zazzetti's fault due to her failure to comply with the Snow Removal Provision. The court denied the motion, expressing doubt that the doctrine of unconscionability could even apply where Prestige was not seeking to enforce the Snow Removal Provision, but concluding in any event that the provision was not unconscionable. On that basis, the court declined Zazzetti's invitation to forbid Prestige from referring to the Snow Removal Provision at trial, although it stated that the provision could not "alter [Prestige's] duties" under principles of premises liability and that it would, if necessary, so instruct the jury.

¶7 Later, just days before trial, the court asked Prestige at the final pretrial conference to clarify its position regarding the Snow Removal Provision. In response, Prestige acknowledged a "possibility" that it would, during trial, "point out" the Snow Removal Provision, but stated that its position at trial was "not going to be that [it] didn't do any snow removal efforts because [it was] anticipating that [Zazzetti] was going to do it herself," and that it was "not going to argue that this is [Zazzetti's] fault because it was her responsibility to get out there and shovel and salt herself." Indeed, Prestige conceded that the Snow Removal Provision did not "change[] the non-delegable duty" that it owed to Zazzetti, and stated that it would not argue otherwise at trial.

¶8    The parties also submitted proposed jury instructions prior to trial. Among Zazzetti's requested instructions was one entitled "Duty of landlord," which stated that Zazzetti "must prove that . . . [Prestige] failed to use reasonable care to keep the rented property . . . safe and suitable for its intended use; or . . . free of defects or dangerous conditions of which [Prestige] knew or should have known would expose others to an unreasonable risk of harm." Prestige did not oppose the "Duty of landlord" instruction. But it asked the court to provide an additional instruction on the topic, this one captioned "Open and obvious danger rule," which stated that "[a] landlord is not liable to its tenants for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the landlord should anticipate the harm despite such knowledge or obviousness." At the final pretrial conference, the court acknowledged the parties' respective jury instruction requests, but indicated that it would entertain argument about them during the course of the trial.

¶9    The case proceeded to a three-day jury trial. During his opening statement, Zazzetti's counsel introduced the Snow Removal Provision, stating that "if you think [including that language in the rental agreement was] not fair, and that's not right, and that is not fulfilling the duty that a landlord has toward vulnerable tenants, then your verdict should be for [Zazzetti]." Zazzetti then called various witnesses, including her husband (her boyfriend at the time of the incident) and her brother, who both testified that the walkways at the apartment complex were rarely plowed or shoveled, and that they were frequently icy. And Zazzetti herself testified that, on the day of her fall, the walkways were icy, and that in the days leading up to the fall she had not seen anyone shoveling or spreading ice melt on the walkways. A representative of Action, however, testified that Action had indeed plowed and shoveled several times in the days leading up to the incident, including twice on the day of the accident itself, and pointed to handwritten plow logs to support that assertion. The manager of the apartment

complex (an employee of Prestige) also testified that she had remotely—via video camera—observed Action plowing and shoveling in the days leading up to the incident, that Prestige would not have paid Action if it had not actually fulfilled its plowing and shoveling duties, and that—despite the language of the Snow Removal Provision—Prestige did not expect its tenants to do their own snow removal.

¶10   Following the manager's testimony, Zazzetti moved for a mistrial, asserting that Prestige's "flip flop" on whether it intended to argue that tenants had a duty to remove snow pursuant to the Snow Removal Provision had "prejudice[d] the way that the trial ha[d] unfolded." In particular, Zazzetti's counsel implied that he would not have discussed the Snow Removal Provision during his opening statement had he known, in advance, that Prestige did not intend to argue that tenants had a duty to remove snow, and stated that he had been "baited into making a big deal out of language in the lease that now we're all agreeing" had no bearing on the duty question. In response, Prestige stated that it had "not put the [Snow Removal Provision] in front of the jury a single time in this trial," and that it "was never going to show up and say that the duty was entirely on or even partially on the tenants." The trial court denied the motion for a mistrial, specifically recalling that, at the final pretrial conference, Prestige had indicated that it was not going to use the Snow Removal Provision to argue that tenants were responsible for removing the snow, and concluding that, under these circumstances, Zazzetti's choice to introduce the provision to the jury during opening statement had been hers alone.

¶11   At the conclusion of the trial's first day, the court invited argument regarding the parties' proposed jury instructions. Zazzetti argued that Prestige's requested "Open and obvious danger rule" instruction was inappropriate. Specifically, Zazzetti asserted that the open and obvious danger rule was inconsistent with the general duty of care owed by a landlord to its tenants,

and that, while the doctrine may still have significance in certain contexts, it does not apply in the landlord-tenant context. In response, Prestige argued that the open and obvious danger rule was "still good law" and that it applies in situations involving landlords and tenants, at least in cases where the accident occurs in a common area, like a walkway or a parking lot. The court took the matter under advisement, and the next day announced that it would give Prestige's requested instruction regarding the open and obvious danger rule, in addition to Zazzetti's requested instruction regarding the general duty of a landlord.

¶12 At the close of the evidence, Prestige moved for a directed verdict. In support of its motion, Prestige argued, in part, that it owed no duty to Zazzetti because of the open and obvious nature of any danger along the sidewalk at the time of her fall. Zazzetti, in turn, argued that, even if the danger was open and obvious, a landlord retains a duty of reasonable care in cases where the landlord should nevertheless anticipate the possibility of harm, and that in this particular case, it was highly foreseeable that a tenant might slip and fall on an icy sidewalk. The court denied the motion for a directed verdict, concluding that the jury needed to decide whether Prestige should have anticipated that someone would fall on the sidewalk despite the open and obvious nature of danger related to snow and ice.

¶13 The trial court then instructed the jury. Regarding the general duty of a landlord to a tenant, the court gave Zazzetti's requested instruction, to which Prestige did not object. This instruction was numbered as "Instruction 31." The court also gave, over Zazzetti's objection, Prestige's requested instruction regarding the open and obvious danger rule. This instruction was numbered as "Instruction 34." Also, following through on its earlier statement that it did not want the jury to draw improper conclusions from references to the Snow Removal Provision, the court additionally instructed the jury that "[t]he owner of a premises has a nondelegable duty to keep her premises reasonably safe for business invitees."

¶14   During his rebuttal closing argument, Zazzetti's counsel again mentioned the Snow Removal Provision, asking the jury to consider this question: "If Prestige really was relying on Action to remove the snow [from the premises], why was [the Snow Removal Provision] in the lease?" Later, after just over an hour of deliberation, the jury answered the first question on the verdict form in the negative, finding that Prestige was not at fault. The verdict form did not ask the jury to select a basis for its finding regarding fault, or to make any specific determination that an open and obvious condition did or did not exist.

ISSUES AND STANDARDS OF REVIEW

¶15   Zazzetti now appeals and presents three issues for our consideration. First, she asserts that the trial court erred when it gave two allegedly irreconcilable jury instructions regarding a landlord's duty toward its tenants. "Whether a jury instruction correctly states the law presents a question of law which we review for correctness." *State v. Sanders*, 2019 UT 25, ¶ 15, 445 P.3d 453 (quotation simplified).

¶16   Second, Zazzetti argues that the court erred by denying her motion to exclude any reference to the Snow Removal Provision. A trial court's decision to admit or exclude evidence is usually reviewed for an abuse of discretion. *See State v. Burke*, 2011 UT App 168, ¶ 16, 256 P.3d 1102. However, "[e]ven when evidence is improperly admitted, reversal is required only where the admission of the evidence amounted to prejudicial error." *Avalos v. TL Custom, LLC*, 2014 UT App 156, ¶ 19, 330 P.3d 727; *see also* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶17   Third, Zazzetti argues that the trial court erred by granting Action's motion for summary judgment. Action, in turn, asserts that the jury's verdict rendered this issue moot. Before we reach the merits of this issue, "we must be satisfied

that the issue raised is not moot." *State v. Legg*, 2016 UT App 168, ¶ 7, 380 P.3d 360 (quotation simplified), *aff'd*, 2018 UT 12, 417 P.3d 592. A mootness challenge presents a question of law. *See State v. Legg*, 2018 UT 12, ¶ 7, 417 P.3d 592 ("Appellate courts review the issue of mootness de novo." (quotation simplified)). Because we ultimately conclude that this issue has been rendered moot by the jury's verdict, we need not reach the merits of Zazzetti's argument. *See State v. Black*, 2015 UT 54, ¶ 10, 355 P.3d 981 ("Courts generally will not resolve an issue that becomes moot.").

ANALYSIS

¶18 In our first section, we address the two challenges Zazzetti raises to the verdict the jury issued in favor of Prestige. In our second section, we address Zazzetti's challenge to the trial court's summary judgment order dismissing Action from the case.

I. Zazzetti's Appeal of the Verdict

¶19 With regard to the jury's verdict that Prestige was not at fault, Zazzetti asks us to consider two issues. First, she asserts that the verdict was tainted by the trial court's decision to give Instruction 34, regarding the open and obvious danger rule. Second, she contends that the verdict was inappropriately affected by the court's denial of her motion to exclude any reference to the Snow Removal Provision at trial. We address these arguments in turn.

A

¶20 Zazzetti's chief argument is that the trial court erred by giving Instruction 34, which she asserts is in conflict with Instruction 31. We disagree; in our view, the two instructions are not in irreconcilable conflict, and the trial court did not err by giving them both. In explaining the basis for our decision, we

begin with a general discussion of the open and obvious danger rule, before turning to an examination of Zazzetti's assertion that the rule has no application in the residential landlord-tenant context. We ultimately conclude that the open and obvious danger rule can apply in the residential landlord-tenant context, at least where the accident occurs in a common area open to invitees, and on that basis conclude that the trial court did not err in giving Instruction 34.

1

¶21 Under Utah law, possessors of land owe a common-law duty of reasonable care to invitees that come onto their land. *See Hale v. Beckstead*, 2005 UT 24, ¶ 30, 116 P.3d 263 ("[T]he law simply requires owners to take reasonable steps to protect invitees."). Today, the contours of this duty are "set forth in sections 343 and 343A of the Second Restatement of Torts." *Id.* ¶ 7; *see also id.* ¶ 23 (stating that "Restatement sections 343 and 343A . . . define[] the duty of care a possessor of land owes to invitees"). These sections of the Restatement are "often referred to as the 'open and obvious danger rule,'" but they "are actually substantially different from the old common law rule governing landowner liability bearing the same name." *Id.* ¶ 7. The common-law version of the open and obvious danger rule, if it applied, operated to bar any recovery by the plaintiff. *See id.* ¶¶ 21, 23. But "[t]he Restatement version of the open and obvious danger rule . . . does not act as a complete bar to the recovery of a plaintiff injured as a result of another's negligence." *Id.* ¶ 23.

¶22 Under Utah's modern version of the rule, "a possessor of land may be subject to liability for injuries to invitees caused by a condition on the land" if, but only if, three conditions are met: (1) the possessor knows or should know about the condition "and should realize that it involves an unreasonable risk of harm" to invitees; (2) the possessor "should expect" that invitees "will not discover or realize the danger, or will fail to protect

themselves against it"; and (3) the possessor "fails to exercise reasonable care to protect [invitees] against the danger." *See Downham v. Arbuckle*, 2021 UT App 121, ¶ 11, 502 P.3d 312 (citing Restatement (Second) of Torts § 343 (Am. L. Inst. 1965)). However, section 343 must be read in conjunction with section 343A, *see Hale*, 2005 UT 24, ¶ 8 (stating that the "two sections . . . must be read together"), which "provides an exception to the possessor's duty of care," *see Downham*, 2021 UT App 121, ¶ 12. Under section 343A, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (Am. L. Inst. 1965); *see also Hale*, 2005 UT 24, ¶ 9.

¶23   Our supreme court has made clear that the open and obvious danger rule, as set forth in Restatement sections 343 and 343A, "defines the duty of care a possessor of land owes to invitees. It does not excuse negligence; it defines it." *Hale*, 2005 UT 24, ¶ 23. Thus, where the open and obvious danger rule clearly applies—that is, where the danger is known or obvious to the plaintiff, and where the possessor has no reason to anticipate harm to the plaintiff despite that knowledge or obviousness— "the land possessor owes no duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby." *See Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 12, 445 P.3d 446; *see also Hale*, 2005 UT 24, ¶ 24 ("Where there is no duty, there is no fault to compare or distribute under the comparative fault scheme.").

¶24   But our supreme court has also made clear that the open and obvious danger rule is not necessarily inconsistent with our statutory comparative fault scheme. *See Hale*, 2005 UT 24, ¶¶ 19– 30. The Restatement version of the open and obvious danger rule "still does not absolutely bar a party from recovering for injuries sustained from an open and obvious danger in all circumstances," because it "does not so strictly define a

landowner's duty as to eliminate any duty to protect or warn his invitees of obvious dangers." *Id.* ¶ 25. For instance, "a landowner has a duty to protect his invitees from obviously harmful conditions or activities on the property if the landowner 'should anticipate the harm' despite the obvious nature of the danger." *Id.* (quoting Restatement (Second) of Torts § 343A(1)). This may be the case where a landowner should anticipate that "an invitee's attention may be distracted," or if the "possessor has reason to believe that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in his position the advantages of doing so would outweigh the apparent risk." *Id.* ¶ 26 (quotation simplified). In sum, "a possessor of land must protect invitees against dangers of which they are unaware, may forget, or may reasonably encounter despite the obviousness of the danger." *Id.* ¶ 27. In these situations, "[w]hile the invitee may also share responsibility for his injuries, he may still recover from the defendant in proportion to the defendant's fault." *Id.* ¶ 26.

¶25 "In this sense, there are two key steps to this analysis—the 'open and obvious danger' step and the 'anticipated harm' step." *Downham*, 2021 UT App 121, ¶ 14. Application of the open and obvious danger rule therefore "calls for a context-specific analysis that takes into account both steps," each of which present factual questions that are ordinarily best left to the factfinder's determination. *See id.* ¶¶ 15, 22–26.

2

¶26 Zazzetti acknowledges that, under Utah law, there exists an open and obvious danger rule, as set forth in Restatement sections 343 and 343A and as interpreted by our supreme court in *Hale* and other cases. And Zazzetti raises no argument that Instruction 34, as given by the court in this case, inaccurately recited the law as set forth by those authorities. Instead, Zazzetti argues that the open and obvious danger rule, while certainly applicable in most cases involving possessors of land, does not

apply in the residential landlord-tenant context. Zazzetti's arguments are not entirely without merit, and we stop short of holding that the rule applies in *all* cases involving landlords and tenants. But Zazzetti's arguments are not sufficient to persuade us that the rule has no application in *this* case, where the accident occurred not inside the rental unit itself but, instead, on a snowy walkway open to public invitees.

¶27 Perhaps most significantly, Zazzetti's arguments run headlong into two of our previous cases, in which we applied the open and obvious danger rule to accidents occurring in public areas outside an apartment complex and a commercial building. *See Candelaria v. CB Richard Ellis*, 2014 UT App 1, 319 P.3d 708; *Jensen v. Gardner*, 2012 UT App 146, 279 P.3d 844. In *Jensen*, a prospective tenant visited an apartment complex "to look at an available rental unit." 2012 UT App 146, ¶ 2. She parked in the tenant parking area and went inside to look at the apartment. *Id.* While she was inside, it started to rain, and upon leaving the apartment after the tour, she "ran" along the walkway leading to the tenant parking lot "with her head down" to avoid the rain, and while running she "hit her head on a balcony overhang, fell, and broke her leg." *Id.* We applied the open and obvious danger rule to this situation, ultimately concluding that the overhanging balcony was open and obvious to the prospective tenant and that she had not demonstrated that the landowner "should have realized that the balcony created an unreasonable risk of harm to her as an invitee." *Id.* ¶¶ 5, 8.

¶28 In *Candelaria*, the plaintiff was a tenant who operated a café in space she had leased in a commercial building. 2014 UT App 1, ¶ 2. One winter day, snow fell and covered the parking lot in front of the building; six days later, the parking lot was still icy, and the tenant slipped and fell while taking garbage to dumpsters in the parking lot. *See id.* ¶¶ 2–3. We applied the open and obvious danger rule to that situation as well, concluding on the facts of that case that "a disputed issue of material fact

remains regarding whether the ice was an open and obvious danger." *Id.* ¶ 7.

¶29 The facts of those cases are strikingly similar to the facts of this case. Each accident occurred in more or less the same place: the common area outside a landlord's building. And in those cases, we treated both a prospective residential tenant and a commercial tenant as invitees for purposes of applying the open and obvious danger rule. Zazzetti attempts to distinguish *Jensen* and *Candelaria* on the basis that Zazzetti is a residential tenant, but we can conceive of no compelling reason to apply a different rule in cases where an actual residential tenant—as opposed to a commercial tenant or a *prospective* residential tenant—slips and falls within a common area outside a landlord's building. Such areas are generally open not just to tenants but to the public at large, including tenants' friends, prospective tenants, and delivery persons.[1] In our view, the outcome of this case should not turn on whether the person who slipped and fell was a residential tenant as opposed to some other type of invitee.[2] And this is especially true here, where Zazzetti herself acknowledged, during oral argument on a pretrial motion, that she "[a]bsolutely" was an invitee at the time of her fall.

---

1. There is no indication, in the record before us, that Prestige made any effort to gate or fence off its property, or to limit entry onto its premises only to existing tenants and other authorized persons.

2. Indeed, we note that other states have applied sections 343 and 343A in similar cases, in which residential tenants have fallen on icy areas outside apartment complexes. *See, e.g., Mucsi v. Graoch Assocs. Ltd. P'ship No. 12*, 31 P.3d 684, 689–91 (Wash. 2001).

¶30    Despite *Jensen* and *Candelaria*, Zazzetti resists the application of the open and obvious danger rule to the facts of this case and makes several arguments in support of her position.

¶31    First, Zazzetti points to a number of Utah Supreme Court cases that she claims stand for the proposition that the open and obvious danger rule does not apply in the residential landlord-tenant context. *See Williams v. Melby*, 699 P.2d 723 (Utah 1985); *Schofield v. Kinzell*, 511 P.2d 149 (Utah 1973); *Cornwell v. Barton*, 422 P.2d 663 (Utah 1967). She asserts that, in these cases, the court held that residential landlords have a simple "duty to exercise reasonable care toward their tenants in all circumstances." *See Williams*, 699 P.2d at 726. And she points out that none of these older cases applied—or even mentioned—Restatement sections 343 or 343A, or the common-law version of the open and obvious danger rule. But these cases were all decided prior to *Hale*, in which our supreme court expressly adopted those Restatement sections. *See* 2005 UT 24, ¶ 17. The court in those earlier cases simply did not confront any questions concerning the applicability of the open and obvious danger rule, and therefore these cases are of limited assistance here.

¶32    Moreover, as our supreme court explained in *Hale*, the open and obvious danger rule is not necessarily inconsistent with a general duty of reasonable care. All possessors of land—whether residential landlords or not—owe duties of reasonable care to invitees who come onto their land. *See Hale*, 2005 UT 24, ¶¶ 7–8; *see also* Restatement (Second) of Torts § 343 (stating that possessors of land must, among other things, "exercise reasonable care to protect" invitees against danger). And as discussed above, *see supra* Part I.A.1, our supreme court has held that the open and obvious danger rule is not inconsistent with general negligence concepts; to the contrary, it "defines" the scope of a land possessor's duty of care. *See Hale*, 2005 UT 24, ¶ 23. Thus, the open and obvious danger rule can still be

appropriately applied even when the overarching duty owed is one of reasonable care.

¶33　Second, Zazzetti points to a passage in *Hale* in which our supreme court noted that the open and obvious danger rule may not apply where "the condition . . . fall[s] within a separate category of negligence or an exception to sections 343 and 343A." *See id.* ¶ 28. Specifically, Zazzetti argues that other sections of the Restatement deal more specifically with duties owed in a landlord-tenant context, and posits that these sections "control over sections 343 and 343A." She centers her argument around section 360 of the Restatement, which provides as follows:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee . . . for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Restatement (Second) of Torts § 360 (Am. L. Inst. 1965). Zazzetti also relies on a comment to section 360, which states that the section applies "even though the person injured . . . has knowledge of the existence of the dangerous condition." *See id.* cmt. b.

¶34　Zazzetti's first problem, in advancing this argument, is that Utah appellate courts have not yet adopted section 360. *See Pullan ex rel. Pullan v. Steinmetz*, 2000 UT 103, ¶ 13, 16 P.3d 1245 ("We leave for another day the decision whether to adopt as law of the state the standards of liability contained in sections 518 and 360."). Our supreme court has, by contrast, clearly adopted

sections 343 and 343A. *See Hale*, 2005 UT 24, ¶¶ 8–10. The court spoke quite broadly in *Hale*, announcing that the "duty of care that possessors of land in Utah owe to invitees upon their property is set forth in sections 343 and 343A of the Second Restatement of Torts." *Id.* ¶ 7. Moreover, as noted above, we have applied sections 343 and 343A—and not section 360—in a case involving a commercial landlord and tenant in which the accident occurred in a common area. *See Candelaria*, 2014 UT App 1, ¶¶ 6–7. And because section 360, at least on its face, applies to all landlords—both commercial and residential—our analysis in *Candelaria* is directly at odds with Zazzetti's position here.

¶35    But we need not decide whether to adopt section 360 in this case because we do not view the principles of section 360—at least as applied to this case—as necessarily inconsistent with the open and obvious danger rule as articulated by our supreme court in *Hale*. As set forth there, the modern version of the rule is not inconsistent with Utah's statutory comparative fault scheme and allows plaintiffs to "recover from the defendant in proportion to the defendant's fault," even in cases where the plaintiff "may also share responsibility for his injuries."[3] *See Hale*, 2005 UT 24, ¶ 26. According to the comments accompanying it, section 360 "may . . . apply even though the

---

3. We recognize that some other states have held that section 360, and not sections 343 and 343A, provides the controlling rule in cases involving landlords and tenants. *See, e.g.*, *Woolston v. Wells*, 663 P.2d 408, 410 (Or. Ct. App. 1983). But in some of those cases, courts rejected application of sections 343 and 343A because they viewed those sections as incompatible with statutory comparative fault schemes. *See id.* at 411–12. Such an argument fails here, however, given our supreme court's articulation of the open and obvious danger rule in *Hale* and its related conclusion that the rule is not incompatible with Utah's comparative fault scheme.

person injured . . . has knowledge of the existence of the dangerous condition." *See* Restatement (Second) of Torts § 360 cmt. b. This statement is not inconsistent with the open and obvious danger rule as articulated by our supreme court. Under that rule, a plaintiff may still recover in situations where a reasonable person in the plaintiff's position would "proceed to encounter the known or obvious danger." *See Hale*, 2005 UT 24, ¶ 26. This tracks the language of comment b to section 360, which states that a plaintiff will not be allowed to recover where "the danger is so apparent and so great that it is unreasonable for him to encounter it." *See* Restatement (Second) of Torts § 360 cmt. b. Both section 360, as illuminated by comment b, and sections 343 and 343A, as articulated by our supreme court, allow, in appropriate cases, for a comparison between the responsibility of the landowner and the responsibility of the plaintiff. *See id.* (stating that the plaintiff's "knowledge may put him in contributory fault"); *see Hale*, 2005 UT 24, ¶ 26 (stating that "the invitee . . . may still recover from the defendant in proportion to the defendant's fault," even if "the invitee may also share responsibility for his injuries").

¶36 In this case, the trial court denied Prestige's motion for a directed verdict on the duty question, specifically crediting Zazzetti's argument that, even if the danger posed by the snowy sidewalk was open and obvious, Prestige would nevertheless retain a duty of reasonable care toward Zazzetti if Prestige should have anticipated that a tenant might slip and fall on a snowy sidewalk. The court denied the motion specifically because it concluded that the jury needed to determine whether Prestige should have anticipated that someone would fall on the sidewalk despite the open and obvious nature of danger related to the snow and ice. Thus, the jury was afforded the opportunity to consider not only whether the danger presented by the snowy sidewalk was open and obvious, but also Zazzetti's rather strong argument that—even assuming the danger was open and obvious—Prestige should have anticipated that a tenant would reasonably choose to encounter snow and ice on the sidewalk,

there being no other reasonable way to walk back to the apartment from the parking lot.[4] Under the circumstances presented here, we do not consider the trial court to have proceeded in a manner inconsistent with the principles set forth in section 360.

¶37    Third, Zazzetti asserts that Instruction 34 is incompatible with the Utah Fit Premises Act (UFPA). *See* Utah Code Ann. §§ 57-22-1 to -7 (LexisNexis 2020 & Supp. 2021). The UFPA "provides specific remedies to residential tenants whose rental units become uninhabitable due to violations of health and safety standards." *Myrah v. Campbell*, 2007 UT App 168, ¶ 16, 163 P.3d 679 (quotation simplified). The UFPA provides residential tenants with a statutory pathway to remedy conditions they consider deficient. *See* Utah Code Ann. § 57-22-6 (LexisNexis 2020). Tenants must provide notice of the allegedly deficient condition to the landlord, who then is given a certain period of time to remedy the problem; if the landlord does not remedy the problem, then tenants may avail themselves of various statutory remedies, and may sue the landlord if the remedy is not provided. *See id.* Thus, at its core, the UFPA imposes certain statutory duties of care on landlords—with concomitant remedies and mechanisms for enforcement—that are distinct from the common-law duty of reasonable care. In the present case, while Zazzetti brought suit alleging that Prestige breached

---

4. We note that the jury's verdict in favor of Prestige does not necessarily mean that it determined either (a) that the danger was open and obvious or (b) that Prestige should not have reasonably anticipated that someone might slip on the sidewalk. There were other grounds upon which a defense verdict could have been based, most notably the evidence indicating that Prestige had discharged its duty of reasonable care by having Action remove snow at the premises several times during the week of the accident, including twice on the very day of the accident.

its common-law duty of reasonable care, Zazzetti did not bring a claim against Prestige under the UFPA. And because the duties implicated are not the same, we see no reason that the open and obvious danger rule—which implicates only common-law duties—should be viewed as inconsistent with the UFPA.

¶38　Finally, Zazzetti asserts that Instruction 34 is incompatible with the implied warranty of habitability and the contractual responsibilities that stem from that warranty. We disagree. A claim for breach of the implied warranty of habitability sounds in contract, not tort. *See Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996) (stating that the Utah Supreme Court has "adopted the implied warranty of habitability as a contractual provision implicit in all residential leases"). Indeed, in her amended complaint, Zazzetti brought a separate claim against Prestige, apart from her negligence claim, for breach of the implied warranty of habitability (which, we note, Zazzetti appears to have at some point abandoned).[5] As with any potential claim for violation of the UFPA, a claim for breach of the implied

---

5. As far as we can tell from the record before us, Zazzetti's claims for breach of contract and breach of the implied warranty of habitability were never formally dismissed by the trial court. In her proposed jury instructions, Zazzetti did request an instruction relating to the implied warranty of habitability, but that instruction was ultimately not given and Zazzetti, in this appeal, does not complain about its absence. Moreover, the special verdict form to which Zazzetti stipulated makes no mention of either the breach of contract claim or the implied warranty of habitability claim, and therefore the jury was not asked to weigh in on those issues. Zazzetti made no mention of these claims in either her opening statement or closing arguments. And Zazzetti does not assert, on appeal, that the trial court erred in any way in relation to those claims. We therefore assume, for purposes of this appeal, that Zazzetti abandoned these two claims sometime prior to trial.

warranty of habitability is an issue separate from breach of the common-law duty of reasonable care, and we perceive no inconsistencies between the open and obvious danger rule—a duty-defining rule in the context of a negligence claim—and a landlord's contractually implied warranty of habitability.

¶39 We are thus unpersuaded by Zazzetti's efforts to convince us of the categorical inapplicability of the open and obvious danger rule to this case. In situations like this one, where a residential tenant slips and falls on a sidewalk outside her apartment complex, Restatement sections 343 and 343A (as interpreted by our supreme court in *Hale*) apply to partially define the scope of the landlord's duty of reasonable care.[6] The

---

6. Given the location of the accident in this case—on a sidewalk outside the apartment complex—we need not grapple with the question of whether sections 343 and 343A would apply in a case in which an open and obvious danger exists inside a tenant's apartment itself (or even inside another part of the complex's common area to which only tenants had access). We left that question open in one of our recent cases, *see Downham v. Arbuckle*, 2021 UT App 121, ¶ 20, 502 P.3d 312, and we leave it open again here. We can see some differences between that situation and this one that may, or may not, counsel in favor of a different result. First, it is not clear to us whether a landlord is (or should be) considered a "possessor" of a tenant's actual living space. *See Hill v. Superior Prop. Mgmt. Services, Inc.*, 2013 UT 60, ¶ 23, 321 P.3d 1054 (stating that while Utah courts "have not yet articulated a comprehensive definition of 'possessor,' our cases emphasize the importance of a key factor—control—and require that the degree of control be substantial"). Second, there may be persuasive policy reasons to forbid a landlord from availing itself of the open and obvious danger rule when the dangerous condition is located in a tenant's living space, was created by the landlord prior to the lease, and cannot be reasonably avoided by the tenant. In that situation, it may in any

(continued…)

trial court therefore did not err by giving Instruction 34, in addition to Instruction 31, and thereby leaving it to the jury to sort out the outstanding factual questions on which applicability of the open and obvious danger rule turned.

B

¶40 Zazzetti also argues that the trial court erred by denying her motion to exclude any reference to the Snow Removal Provision at trial. Specifically, she asserts that the Snow Removal Provision was both contrary to public policy and unconscionable, and therefore argues that it was not relevant and that Prestige should have been barred, in advance, from discussing it at trial. But because we ultimately conclude that any prejudice Zazzetti may have sustained as a result of the court's ruling was the result of her own tactical decisions, and not the result of the court's ruling, we need not reach the question of whether the ruling was correct on its merits.

¶41 "To prevail on appeal" regarding a claim of erroneously admitted evidence, "an appellant has the burden to show that [the] erroneously admitted evidence was prejudicial." *State v. Bowden*, 2019 UT App 167, ¶ 20, 452 P.3d 503; *see also Avalos v. TL Custom, LLC*, 2014 UT App 156, ¶ 19, 330 P.3d 727 ("Even when evidence is improperly admitted, reversal is required only where the admission of the evidence amounted to prejudicial error."). "For an error to be harmful, the likelihood of a different outcome

___

(…continued)

event be apparent as a matter of law that the landlord should reasonably anticipate harm despite the obvious nature of the hazard, and the tenant may well have remedies sounding in the UFPA or the implied warranty of habitability. But we need not further examine these issues in this case, where the accident occurred not inside a tenant's living space but, instead, outside the apartment on a walkway leading to the building.

must be sufficiently high to undermine confidence in the verdict." *City of Hildale v. Cooke*, 2001 UT 56, ¶ 30, 28 P.3d 697 (quotation simplified). Here, even assuming, for the purposes of the argument, that the trial court should have barred Prestige, in advance, from discussing the Snow Removal Provision during trial, the court's failure to so rule did not prejudice Zazzetti.

¶42    At the final pretrial conference, Prestige made it clear that it would not be arguing that Zazzetti's fall was her own fault due to any failure on her part to comply with the Snow Removal Provision. Indeed, Prestige explicitly acknowledged that the Snow Removal Provision did not "change[] the non-delegable duty" of reasonable care that it owed to Zazzetti, and represented that it would not argue otherwise at trial.

¶43    Despite these clear statements from Prestige, Zazzetti (or her counsel) made the decision to bring the Snow Removal Provision to the jury's attention during opening statement, and then again in her rebuttal closing argument. Apparently, Zazzetti believed that, by directing the jury's attention to the Snow Removal Provision, she could bolster her argument that Prestige was an unreasonable actor. And when Zazzetti argued—after Prestige's building manager testified that Prestige did not expect tenants to perform snow removal—that she had been prejudiced by Prestige's alleged "flip flop" regarding the provision, the trial court disagreed, specifically recalling that Prestige had indicated at the final pretrial conference that it was not going to use the Snow Removal Provision to argue that tenants were responsible for snow removal, and concluding that Zazzetti's choice to introduce the provision to the jury had been hers alone. The situation might be different had Prestige not committed, in open court at the final pretrial conference, not to raise the issue, or if Prestige had in fact raised the issue during trial despite its previous commitment not to do so. But on the record before us, any prejudice Zazzetti might have sustained from introduction of the Snow Removal Provision was the result of her own tactical decision to voluntarily tell the jury about it,

and cannot fairly be laid at the feet of either Prestige or the trial court. *Cf. Vehicle Market Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1257 (10th Cir. 2016) (stating that "'a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted,'" and that "[t]his is true even if the party introduces the evidence only to limit its impact on cross-examination" (quoting *Ohler v. United States*, 529 U.S. 753, 755 (2000)).

¶44    Furthermore, as already noted, the trial court instructed the jury that Prestige had a nondelegable duty to keep the premises reasonably safe for its tenants, including Zazzetti. Jurors are presumed to have followed a trial court's instructions. *See State v. Wall*, 2020 UT App 168, ¶ 33, 479 P.3d 355 ("In the absence of any circumstances suggesting otherwise, courts presume that the jury follows [its] instructions." (quotation simplified)). Because of this clear guidance offered by the trial court, and because Prestige did not argue otherwise, we believe it unlikely that the jury would have relied on the Snow Removal Provision to conclude that Zazzetti's accident was her own fault due to her failure to personally clear the sidewalks.

¶45    And finally, "[e]rrors involving the improper admission of evidence are often harmless where there is other overwhelming evidence in the record" that supports the verdict. *State v. Leech*, 2020 UT App 116, ¶ 44, 473 P.3d 218. Here, there was ample evidence presented at trial—including documents and testimony indicating that Action had actually performed snow removal at the apartment complex in the days leading up to, and on the day of, the fall—to support the jury's conclusion that Prestige had fulfilled its duty to Zazzetti.

¶46    For all of these reasons, and even assuming that the trial court should have barred Prestige, in advance, from mentioning the Snow Removal Provision during trial, the court's failure to so rule does not undermine our confidence in the jury's verdict. It is unlikely that Zazzetti sustained any prejudice at all from the

court's failure to so rule but, to the extent she did, any prejudice she sustained was the result of her own tactical decision to voluntarily tell the jury about the Snow Removal Provision.

¶47 We therefore affirm the jury's verdict in Prestige's favor, and see no reason to set aside the jury's determination that Prestige fulfilled its duty to Zazzetti.

## II. Zazzetti's Appeal of the Summary Judgment Order

¶48 Zazzetti next asserts that the trial court erred when it granted Action's motion for summary judgment and dismissed it from the lawsuit. Specifically, she contends that Action assumed at least part of Prestige's duty to maintain the premises in a reasonably safe condition, and that Action can therefore be held liable for failing to use reasonable care in discharging that duty. Action resists this argument on its merits but, in addition, asserts that the verdict in favor of Prestige renders this issue moot. As Action puts it, "[t]he issue of whether Prestige or Action" or both "had the duty to remove snow was rendered moot by the jury's conclusion that [any such] duty was fulfilled." We agree with Action that the verdict rendered the issue moot, and therefore we need not discuss the merits of Zazzetti's argument.[7]

---

7. On the merits, Zazzetti's argument is far from frivolous. *See* Restatement (Second) of Torts § 324A(b) (Am. L. Inst. 1965) (stating that "[o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care . . . if . . . he has undertaken to perform a duty owed by the other to the third person"); *see also Alder v. Bayer Corp.*, 2002 UT 115, ¶¶ 28, 32, 61 P.3d 1068 (adopting section 324A and holding that subsection (b) applies where the actor

(continued…)

¶49    "Mootness is a jurisdictional issue." *State v. Legg*, 2016 UT App 168, ¶ 9, 380 P.3d 360, *aff'd*, 2018 UT 12, 417 P.3d 592; *see also Carlton v. Brown*, 2014 UT 6, ¶¶ 29–30, 323 P.3d 571 (characterizing mootness as one component of "justiciability," and stating that "in the absence of any justiciable controversy between adverse parties, the courts are without jurisdiction" (quotation simplified)). "The burden of persuading the court that an issue is moot lies with the party asserting mootness." *Legg*, 2016 UT App 168, ¶ 9 (quotation simplified). "An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants," *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (quotation simplified), or, in other words, when the requested relief appears to be "impossible or of no legal effect," *State v. McClellan*, 2014 UT App 271, ¶ 3, 339 P.3d 942 (quotation simplified).

¶50    Here, Action has met its burden of demonstrating that the trial court's summary judgment decision regarding Action was rendered moot by the jury's verdict. As previously noted, Zazzetti brought identical claims against both Prestige and Action. And the trial court clearly instructed the jury that Prestige had a nondelegable duty to Zazzetti to keep its premises reasonably safe, meaning that while Prestige could have hired Action to help discharge its duty, the duty itself was, and always remained, Prestige's. *See, e.g., Price v. Smith's Food & Drug*

---

(…continued)
"undertook at least some portion of" the other's duty); *Gazo v. City of Stamford*, 765 A.2d 505, 510 (Conn. 2001) (applying section 324A in a snow removal case, and concluding that "under § 324A(b)" a snow removal contractor "is subject to liability to the plaintiff for his physical injuries if the plaintiff can show that [the contractor] failed to exercise reasonable care when performing the duty owed by [the landowner] to the plaintiff"). But we need not delve into the matter further, because the verdict renders the matter moot.

*Centers, Inc.*, 2011 UT App 66, ¶ 26, 252 P.3d 365 ("A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed." (quotation simplified)). Thus, regardless of whether Action *also* could have been held liable for breach of duty, any breach would have had to involve Prestige. Action was, at most, a kind of duty subcontractor; the entirety of the duty to keep the premises in a reasonably safe condition was always Prestige's, even if Prestige asked Action for assistance in discharging part of that duty. In this situation, a determination that Action fulfilled its part of Prestige's duty does not necessarily dictate the conclusion that Prestige fulfilled its larger overarching duty. But a jury's decision that Prestige had fulfilled its larger overarching duty necessarily encompasses the conclusion that Action fulfilled the part of that duty with which it had agreed to assist. Stated another way, in this situation, given the nondelegable nature of the overarching duty, it is legally impossible for the jury to conclude that Prestige fulfilled its duty but that Action did not.

¶51   And in the present case, the jury determined that Prestige had not breached its duty to Zazzetti. Because this duty included any duty Action might have owed Zazzetti, it necessarily follows that Action did not cause Prestige to breach its duty. If the jury believed Action had failed in its contractual snow removal responsibilities, thereby causing Zazzetti's injuries, it would have consequently found Prestige liable, as it was Prestige that held the nondelegable duty to keep its premises reasonably safe. Thus, because we have upheld the jury's verdict as to Prestige, Zazzetti's requested relief would be "of no legal effect," *see McClellan*, 2014 UT App 271, ¶ 3 (quotation simplified), because a jury has already determined—by finding that Prestige did not breach its nondelegable duty—that Action also fulfilled whatever responsibility it owed to Zazzetti. We thus conclude that the issues surrounding the propriety of the court's grant of summary judgment in favor of Action were rendered moot by

the jury's verdict in favor of Prestige, and we resolve Zazzetti's challenge to the court's summary judgment ruling on this basis.

CONCLUSION

¶52 The trial court did not err in giving Instruction 34, because that instruction was not inconsistent with Instruction 31 or with any other principle of Utah law. Additionally, any potential error in the court's evidentiary ruling regarding the Snow Removal Provision did not prejudice Zazzetti, because any harm she sustained as a result of that ruling was attributable to her own tactical decisions. Finally, any question about whether the court erred by granting Action's motion for summary judgment was rendered moot by the jury's verdict.

¶53 Affirmed.