**2021 UT App 121**

## THE UTAH COURT OF APPEALS

TARA DOWNHAM,
Appellant,
*v.*
ALAN ARBUCKLE,
Appellee.

Opinion
No. 20200612-CA
Filed November 12, 2021

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 190904244

Ron J. Kramer and Allen M. Young,
Attorneys for Appellant

Mitchel T. Rice, Andrea M. Keysar, and Marianne
Schumann, Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

TENNEY, Judge:

¶1    Tara Downham rented a home from Alan Arbuckle. Outside one of the back doors was a wooden pallet that served as the back step. After this wooden step broke one day, allegedly injuring Downham in the process, Downham sued Arbuckle for negligence.

¶2    Arbuckle moved for summary judgment based on the "open and obvious danger" rule. This is a "duty-defining rule" that shields land possessors from liability for injuries that were sustained on their property if those injuries were caused by open and obvious dangers. *Lyman v. Solomon*, 2011 UT App 204, ¶ 4,

258 P.3d 647 (quotation simplified). Applying this rule, the district court granted summary judgment to Arbuckle.

¶3   We disagree with the district court's application of this rule to this case. Contrary to the court's conclusion, this rule doesn't stop with a determination that there was an open and obvious danger. Instead, even where there is an open and obvious danger, the land possessor may still be liable if, under the circumstances, he should anticipate that the invitee will encounter the dangerous condition. Because a jury could reasonably conclude that this was the case here, we reverse the grant of summary judgment.

BACKGROUND[1]

¶4   Tara Downham lived in a home that she rented from Alan Arbuckle. The home had two doors that led to the backyard: one was a wooden swinging door, and the other was a sliding glass door. To bridge the gap between the home and the backyard, a wooden step had been placed outside the sliding glass door.

¶5   Downham used this make-shift step for at least 18 months before the incident in question. During that time, Downham complained to Arbuckle that the step was "very wobbly, unsafe[,] and that it was moving." Still, she kept it there because "[t]here was a drop-off from the door to the ground." So although her family acknowledged that it "was safer than not having a step," they "expected a replacement with a permanent step." But Arbuckle didn't provide one.

---

1. "When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party." *Utah Golf Ass'n v. City of N. Salt Lake*, 2003 UT 38, ¶ 10, 79 P.3d 919.

¶6    One day in June 2015, Downham stepped on the wooden step as she entered the backyard. It broke as she did, and she was injured as a result.

¶7    Downham sued Arbuckle for negligence based on principles of premises liability. Arbuckle later moved for summary judgment, arguing that the "open and obvious danger rule" barred Downham's recovery. The district court granted Arbuckle's motion, holding that Arbuckle owed no duty to Downham because the wooden step presented an "open and obvious" danger to her.

¶8    Downham now appeals the court's grant of summary judgment.

## STANDARD OF REVIEW

¶9    "We review the district court's decision on summary judgment de novo." *Potter v. South Salt Lake City*, 2018 UT 21, ¶ 16, 422 P.3d 803 (quotation simplified).

## ANALYSIS

¶10    Downham argues that summary judgment was improper because the district court misapplied the open and obvious danger rule to this case. We agree.[2]

---

2. Downham also argues that summary judgment was improper because there are genuine disputes of material fact about whether the wooden step existed or whether Arbuckle knew of the step's existence. Given our disposition, we need not rule on this alternative argument. But in any event, we note that although Arbuckle did question the step's existence in his initial

(continued…)

¶11    In Utah, "a possessor of land may be subject to liability for injuries to invitees caused by a condition on the land if" the possessor

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Lyman v. Solomon*, 2011 UT App 204, ¶ 4, 258 P.3d 647 (quotation simplified); *see also* Restatement (Second) of Torts § 343 (1965).

¶12    The open and obvious danger rule provides an exception to the possessor's duty of care. Under this rule, a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Lyman*, 2011 UT App 204, ¶ 4 (quotation simplified); *cf. Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 12, 445 P.3d 446 (noting that the Utah Supreme Court has "adopted the open and obvious danger rule as embodied in sections 343 and 343A of the Restatement (Second) of Torts"); *Hale v. Beckstead*, 2005 UT 24, ¶ 17, 116 P.3d 263 (same). "If the open and obvious danger rule applies, then the land possessor owes no

---

(…continued)

responsive pleadings, he admitted for purposes of summary judgment that there was a wooden step and that he knew about it. Because the district court accepted Arbuckle's concessions and yet ruled in his favor anyway on legal grounds, there is no genuine dispute of material fact on this that would provide a separate basis for overturning the summary judgment ruling.

duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby." *Coburn*, 2019 UT 24, ¶ 12.

¶13    But this rule does not always shield a land possessor from liability where the danger is later determined to have been open and obvious. Instead, a possessor may still be liable if the possessor should have "anticipate[d] harm despite" the invitee's knowledge of the danger or the danger's obviousness. Restatement (Second) of Torts § 343A(1); *see also Coburn*, 2019 UT 24, ¶ 12; *Lyman*, 2011 UT App 204, ¶ 4. In other words, the "possessor is not relieved of the duty of reasonable care which he owes to the invitee for [the invitee's] protection" if the possessor had "reason to expect that the invitee" would "nevertheless suffer physical harm" from the open and obvious danger. Restatement (Second) of Torts § 343A cmt. f. "Such reason may . . . arise," for example, "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* The same is true where there is "reason to expect" that the invitee "would forget the danger, would become distracted from it, or would reasonably encounter the danger despite the risk." *Hale*, 2005 UT 24, ¶ 34.

¶14    In this sense, there are two key steps to this analysis—the "open and obvious danger" step and the "anticipated harm" step. And as evidenced by the parties' arguments in this case, these can sometimes seem to be in tension. After all, if the danger is truly open and obvious, then one could argue that the possessor should always anticipate that the invitee will encounter it. But if that were always enough to open the possessor to liability, the rule's practical effect would be something of a nullity.

¶15    It's not. Properly understood, the open and obvious danger rule calls for a context-specific analysis that takes into account both steps to determine whether the possessor should be legally shielded from liability. This rule "simply states that, under appropriate circumstances, a landowner's duty of care might not include warning or otherwise protecting visitors from obvious dangers," but it nevertheless "does not operate to allow a landowner to act negligently and remain free from liability" just because "his negligence was obvious to those who were injured thereby." *Id.* ¶ 23.

¶16    Thus, when the rule is invoked, a court must "inquir[e] into whether factors existed to vest in the [land possessor] a duty to warn or otherwise protect the [invitee]" from the obvious danger. *Id.* ¶ 32. Among other considerations, application of the rule will "var[y] in stringency depending upon the nature of the invitee and the nature of the possessor of land." *Id.* ¶ 31.

¶17    A few cases illustrate how this plays out. In *Lyman,* for example, we held that the open and obvious danger rule shielded a land possessor from liability for injuries that an invitee suffered when traversing the possessor's unlit driveway. 2011 UT App 204, ¶¶ 5–6. Considering the first part of this rule, we concluded that the dangers associated with the unlit and uneven driveway were open and obvious. *Id.* ¶ 5. This was so because "[t]he driveway's uneven surface condition was familiar" to the invitee, "as she had encountered it many times," and also because "the indentation alleged [was] typical of unpaved roads." *Id.* Considering the second part, we held that although the possessor "could have expected" that the invitee "would choose to traverse the driveway despite the potential danger," there was nothing in the record suggesting that the possessor "should have expected" that her invitee "would not do so safely." *Id.* ¶ 6. For instance, "there [was] no suggestion that" the possessor had told the invitee to "hurry" or that the possessor knew of "any physical condition" that would render

the invitee "incapable of safely negotiating the driveway." *Id.* "In the absence of such factors," we affirmed the grant of summary judgment to the possessor. *Id.* ¶¶ 6–7.

¶18 We reached a similar conclusion in *Jensen v. Gardner*, 2012 UT App 146, 279 P.3d 844. There, we held that an apartment complex owner was not liable to a prospective tenant who hit her head on a balcony during a rainstorm. *Id.* ¶¶ 8–9. Although the balcony presented an "open and obvious danger," *id.* ¶ 6, the "undisputed facts demonstrate[d]" that the complex owner "did not know" that the prospective tenant "was coming from and running to the private tenant parking lot" and did not have any "knowledge of anyone else ever hitting his or her head on the balcony." *Id.* ¶ 7. We thus held that the owner "could not reasonably have anticipated that [the prospective tenant] would have been running by that balcony with her head down and looking at her feet rather than at the balcony" when she returned to the private parking lot in the rain. *Id.* ¶ 8. And because of this, the open and obvious danger rule relieved the owner from liability for the prospective tenant's subsequent injuries. *Id.* ¶ 9.

¶19 By contrast, our supreme court in *Hale* concluded that the rule did not shield a homeowner from liability after a hired painter fell from the homeowner's unenclosed balcony. 2005 UT 24, ¶¶ 3–6, 39–40. The supreme court explained that the "danger the unenclosed balcony presented was indisputably obvious," thus satisfying the first part of the rule. *Id.* ¶ 34. But the court nevertheless held that summary judgment in the homeowner's favor was "premature" because it did not have the facts surrounding the incident "in full." *Id*. ¶¶ 32, 37–38. Without knowing, for instance, whether the painter "was instructed to paint a wall by the unenclosed balcony" or whether reasonable alternatives existed that would have allowed the painter to complete his work without "encounter[ing] the danger," the court could not conclude as a matter of law that the homeowner was entitled to summary judgment. *Id*. ¶¶ 37–38.

¶20 With these principles in mind, we turn to the case at issue. In doing so, we first note that the parties and the district court below all assumed that Arbuckle qualifies as a possessor and Downham qualifies as an invitee for purposes of this rule. Neither party has contested this on appeal, so we proceed accordingly.

¶21 The question, then, is how the open and obvious danger rule applies to this case—i.e., whether the rule relieved Arbuckle of his duty of care because of the obviousness of the danger, or whether Arbuckle can instead still be liable because he had "reason to expect" that Downham would "nevertheless suffer physical harm" from the open and obvious danger. Restatement (Second) of Torts § 343A cmt. f. And more to the point, given that the district court granted summary judgment to Arbuckle, the question is whether summary judgment was warranted under this rule under these circumstances.

¶22 A court grants summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). The "initial question of the existence of a legal duty in tort cases is a question of law for the court to determine." *Lyman*, 2011 UT App 204, ¶ 3. But even so, "[m]ost cases involving claims of negligence are not susceptible to summary disposition." *Id.* (quotation simplified). One reason that they are not is that while the question of whether a duty existed is a question of law reserved for the court, that question sometimes turns on subsidiary questions that are factual in nature and thus more appropriately left to the jury. *See* Restatement (Second) of Torts § 328B cmt. b; *id.* § 328C cmt. b. In this sense, "[l]iability for negligence is often said" to involve a "mixed question of law and fact." *Id.* § 328B cmt. b.

¶23 Where the existence of a duty turns on a factual question, and where "the evidence is such that no reasonable [person]"

could disagree about the facts, the court may "remove the issue from the jury" and determine those facts itself. *Id.* § 328B cmt. d. But where the evidence is such that "the jury may reasonably arrive at either conclusion as to the existence or non-existence" of the necessary facts, "the issue is for the jury to decide." *Id.* § 328C cmt. a.

¶24 The Utah Supreme Court applied this construct in *Gray v. Scott*, 565 P.2d 76 (Utah 1977). Relying on Restatement § 328B, the supreme court held that it is the "function of the court to determine whether, upon facts in evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act . . . for the protection of the plaintiff." *Gray*, 565 P.2d at 78 (quotation simplified). If "the existence of the duty" depends on facts about "which the jury may reasonably come to either one of two conclusions," however, the court must simply "instruct the jury as to [the] defendant's duty, or absence of duty, if either conclusion as to such fact is drawn." *Id.* (quotation simplified).

¶25 Previous Utah decisions about the open and obvious danger rule have not explicitly held that the rule's steps present factual questions. But they have implicitly treated them as such. This appears to be why *Hale* concluded that summary judgment was "premature" in that case—namely, the supreme court thought that there were unanswered factual questions that might have altered the legal question of whether a duty existed. *See* 2005 UT 24, ¶¶ 32, 37–38. This also appears to be why this Court stressed in *Jensen* that the relevant facts were "undisputed" before holding that summary judgment was warranted in that case. *See* 2012 UT App 146, ¶ 5.

¶26 Other jurisdictions have recognized this more explicitly. Courts have commonly held that the rule's first step (whether there was an open and obvious danger) presents a factual question. *See, e.g.*, *Six Flags Am., LP v. Gonzalez-Perdomo*, 242 A.3d

1143, 1153 (Md. Ct. Spec. App. 2020); *Schulman v. Old Navy/The Gap, Inc.*, 845 N.Y.S.2d 341, 342 (N.Y. App. Div. 2007); *Johnson v. American Italian Golf Ass'n. of Columbus*, 113 N.E.3d 1144, 1150–51 (Ohio Ct. App. 2018); *Carrender v. Fitterer*, 469 A.2d 120, 124 (Pa. 1983); *Millson v. City of Lynden*, 298 P.3d 141, 144–45 (Wash. Ct. App. 2013); *Gable v. Gable*, 858 S.E.2d 838, 854 (W. Va. 2021).[3] So too with respect to the second step (whether the land possessor should have anticipated that the invitee would encounter the danger). *See, e.g.*, *Olmanson v. LeSueur County*, 693 N.W.2d 876, 881 (Minn. 2005); *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 660 (Mo. Ct. App. 1997) (en banc); *Steichen v. Talcott Props., LLC*, 2013 MT 2, ¶ 17, 292 P.3d 458. We agree on both fronts.

¶27    Given this framework, we must accordingly determine whether reasonable jurors could disagree about whether (a) the wooden step presented an open and obvious danger or (b) Arbuckle should have anticipated that Downham would encounter it anyway. If jurors could disagree on either front, then the district court's grant of summary judgment was "premature." *Hale*, 2005 UT 24, ¶¶ 32, 37. If reasonable jurors could not disagree, however, then Arbuckle was entitled to judgment as a matter of law.

---

3. Illinois has bifurcated this question, holding that questions about "the physical nature of the condition" are factual but questions about "whether the dangerous condition is open and obvious" are legal. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 18, 21 N.E.3d 684. We need not rule on this potential wrinkle here, however, because it would not change our resolution of this case. As discussed below, no reasonable jury could disagree about either the physical condition of this step or whether it presented an open and obvious danger.

¶28 In its decision, the district court first held that the wooden step presented an "open and obvious" danger as a matter of law—i.e., that no reasonable juror could conclude otherwise. On this, we agree with the district court. In her deposition, Downham said that she "stepped on" the wooden step "numerous times" before this incident and that she thought it was "wobbly" and "unsafe." Others familiar with the step also explained that it would sometimes "slid[e] out a little bit" and "squeak" when stepped on. For his part, Arbuckle once acknowledged that he "need[ed] to get that [step] replaced" after Downham's husband had slipped on it in his presence. And on appeal, Arbuckle argues to us that this step did present an open and obvious danger as a matter of law.

¶29 The nature of the step itself corroborates that this was so. This was not a professionally constructed step of the type that one would expect to see outside a home. Rather, as shown by the below photograph that was taken after the incident, this was essentially a "[s]tandard pallet" that "just looked like [it] had been cut into a step."



Given this, the dangers associated with this step were indeed open and obvious.

¶30  Downham nevertheless resists this conclusion in her brief. Relying on *Normandeau v. Hanson Equipment, Inc.*, 2009 UT 44, 215 P.3d 152, Downham suggests that because her prior complaints focused on the step potentially slipping, rather than breaking, the danger of it breaking was not open and obvious. But it's unclear whether *Normandeau* even applies to an analysis under the open and obvious danger rule. The language that Downham relies on discusses general principles of foreseeability as they relate to general concepts of duty. *See Normandeau*, 2009 UT 44, ¶¶ 18–20. Although the open and obvious danger rule is also about duty, it has its own particular contours. Downham does not adequately brief any argument for how (or even whether) the general foreseeability discussion from *Normandeau* interacts with the inquiry called for by the open and obvious danger rule. *See State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (holding that an "issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court" (quotation simplified)).

¶31  In any event, even if there were some analytical cross-over, *Normandeau* does not help Downham on this point. *Normandeau* held that "[w]hether a harm was foreseeable . . . depends on the general foreseeability of such harm, not whether the specific mechanism of the harm could be foreseen." 2009 UT 44, ¶ 20 (quotation simplified). As noted, Downham complained about this step slipping, about it squeaking, and about its unsuitability for use. That she was later injured in a different way from the one she was apparently most worried about does not mean that this step still did not pose an obvious danger of some kind.

¶32 Given all this, we agree with the district court that, as a matter of law, this step presented an open and obvious danger to those who would use it. No reasonable jury could conclude otherwise.

¶33 But "determining that a danger is open and obvious is not the end of the analysis in assessing whether a defendant breached his duty of care." *Hale*, 2005 UT 24, ¶ 34. Again, even where there is an open and obvious danger, a possessor can be liable if the possessor had "reason to expect that the invitee" would "nevertheless suffer physical harm" from it. Restatement (Second) of Torts § 343A cmt. f. And this could be so if there is reason to believe that the invitee will be "unaware, may forget, or may reasonably encounter" the danger despite its obviousness. *Hale*, 2005 UT 24, ¶ 27.

¶34 We part ways with the district court here. Downham rented a home from Arbuckle, and the wooden step in question was placed outside one of the back doors that led into the backyard. In his deposition, Arbuckle said that he thought "it might be helpful to have a small[] step" to bridge the gap between the home and the cement of the backyard, thus implicitly (if not explicitly) recognizing that his tenants would use both this door and this step. From this, a jury could reasonably find that Arbuckle either should have anticipated, or in fact did anticipate, that his tenants would use the back door and whatever back step had been provided as a means of accessing that backyard.

¶35 Arbuckle nevertheless argues that he should be shielded from liability because Downham "had multiple alternatives to avoid the wooden step," including "walk[ing] out the front door and . . . around the house to the back," "mov[ing] the wooden step out of the way and not us[ing] it," or "exit[ing] from the wooden, swinging door located just a few feet away." But even assuming that Downham had reasonable alternatives to protect

herself from the open and obvious danger posed by the step, the jury must still decide whether Arbuckle should have anticipated that Downham might fail to do so. In particular, the jury would need to determine whether Arbuckle had reason to believe that Downham would continue using the dangerous step "because to a reasonable [person] in [her] position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A cmt. f; *see also Hale*, 2005 UT 24, ¶ 26. Because a reasonable jury could reach different conclusions about this from the undisputed evidence, this issue is not susceptible to resolution on summary judgment.

¶36    Moreover, *Hale* also contemplated that a possessor can be liable if there's reason to anticipate that the invitee may "forget the danger," "become distracted from it," or might "reasonably encounter the danger despite the risk." 2005 UT 24, ¶ 34. There are any number of reasons why Downham (not to mention her children) might have momentarily forgotten about the problems with this step, or instead why she might have chosen to use it anyway for reasons of exigency, necessity, or convenience. We cannot say that, as a matter of law, Downham was legally required to always avoid using the back door to her own backyard, particularly where the landlord himself recognized that she was likely using it. Instead, under these circumstances, we conclude that a jury could reasonably determine that Arbuckle should have anticipated that Downham would encounter this danger despite the risk.


CONCLUSION

¶37    The sole question presented on appeal is whether the open and obvious danger rule would prevent a jury from holding Arbuckle liable in this case. The circumstances at issue involve an occupant of a home, a back door to the backyard, and an obviously dangerous step from that door that the landlord

knew was being used by the tenants to enter that backyard. Under these circumstances, although this step presented an open and obvious danger, a jury could reasonably determine that Arbuckle should have anticipated that Downham would encounter and be harmed by this step anyway. We accordingly reverse the district court's grant of summary judgment.

—————