2025 UT App 126

# THE UTAH COURT OF APPEALS

KATHIE ANDREWS,
Appellant,
*v.*
STONEY BROOK CONDOMINIUM ASSOCIATION
AND WILLIAM B. THOMASON,
Appellees.

Opinion
No. 20240581-CA
Filed August 21, 2025

Third District Court, Salt Lake Department
The Honorable Dianna Gibson
No. 220902154

Ryan J. Schriever and Heather J. Schriever,
Attorneys for Appellant

Ryan D. Poole and Burt R. Willie, Attorneys for
Appellee Stoney Brook Condominium Association

Kristin A. VanOrman, Jessica J. Johnston,
and Scarlet R. Smith, Attorneys for
Appellee William B. Thomason

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1　Kathie Andrews drove to a condominium complex at the invitation of a friend who lived there. As she was making her way into the building from the parking lot, Andrews slipped and fell on a pile of snow that another resident—William B. Thomason— had brushed off his car and onto the sidewalk hours earlier. Andrews was injured as a result of that fall, and she sued both Thomason and the Stoney Brook Condominium Association

(Stoney Brook), alleging claims against each defendant for both premises liability and negligence.

¶2 Later, the district court granted summary judgment in favor of both Stoney Brook and Thomason on all of Andrews's claims, concluding (among other things) that the danger posed by the snow pile was open and obvious and that there was insufficient evidence that the snow pile proximately caused Andrews's injuries. On appeal, Andrews challenges the court's summary judgment order. We affirm that order, because we conclude that the open and obvious danger rule applies here as a matter of law and that, therefore, neither Stoney Brook nor Thomason breached any duty to Andrews.


BACKGROUND[1]

¶3 One February evening, a friend who lived at the Stoney Brook condominium complex invited Andrews to visit. It had been "snowing off and on" that day. When Andrews arrived at the complex, she parked her car, got out, and began walking toward the friend's unit. As she was walking on the sidewalk next to the parking lot, she encountered a snow pile and she fell, breaking her wrist.

¶4 Earlier that day, at around 11:35 a.m., Thomason had walked to his car, which had been parked in a stall abutting the sidewalk. He found snow on the hood of his car, and he brushed that snow off the car and onto the sidewalk. Just a few minutes earlier, at around 11:10 a.m., the sidewalk had been cleared of snow by another resident of Stoney Brook who was apparently contracted to clear the walkways. Thus, some of the snow that

---

1. In reviewing a grant of summary judgment, "we recite the facts in the light most favorable to the non-moving party," *see Burton v. Chen*, 2023 UT 14, ¶ 5 n.2, 532 P.3d 1005 (cleaned up), here Andrews.

Thomason brushed off his car fell onto the previously cleared sidewalk. Screenshots taken from surveillance camera footage (one of which we include in this opinion) show that the brushed snow obscured part—but not all—of the sidewalk and that a corridor on the sidewalk remained clear of snow. A safety expert retained by Stoney Brook later determined that this clear corridor was at least one foot wide at the time Thomason brushed the snow onto the sidewalk and that, despite Thomason's actions, "there was an area of clear sidewalk available . . . to walk on." Those specific conclusions are not contested by Andrews.



¶5      Some eight hours later, at 8:15 p.m., Andrews arrived at the complex. Although it was evening, Andrews "could see the sidewalk." Andrews then began to walk from her car along the sidewalk toward the building, eventually encountering the pile of snow that Thomason had brushed off his car. Screenshots taken from surveillance footage from that evening (one of which we include in this opinion) show that a corridor of the sidewalk remained free from snow. Andrews claims that, as she was walking, she was distracted because she was looking toward the

building rather than looking at her feet and that she "wasn't . . . paying attention" to the ground in front of her. She acknowledges that nothing "prevented [her] from" using the part of the sidewalk that was clear of snow. And before this incident, she had slipped and fallen in icy conditions on at least one occasion. Nevertheless, Andrews stepped onto the snow pile, at which point she fell and broke her wrist.



¶6      Andrews later filed suit against both Stoney Brook and Thomason, asserting causes of action against each of them for premises liability and negligence. Andrews claimed that both Stoney Brook and Thomason were liable under premises liability because they "failed to use reasonable care to keep the property safe" since the "snow had been in existence for over 8 hours" and because Stoney Brook and Thomason both "had actual or constructive notice" of the snow pile but did not remove it. Andrews further asserted that Stoney Brook was negligent in "not discovering . . . or cleaning up the ice in the walkway," causing Andrews's eventual fall. Similarly, she claimed that Thomason "negligently created a dangerous and hazardous condition" on the property "by removing snow off his car and onto the walkway

and not cleaning up the ice in the walkway." Andrews requested relief in the form of economic and noneconomic damages.

¶7    In their answers, both Stoney Brook and Thomason invoked the open and obvious danger rule as a defense, and both asserted (among other things) that any damages Andrews sustained were the result of her own negligence.

¶8    Later, both Stoney Brook and Thomason moved for summary judgment, asking the district court to dismiss Andrews's complaint in its entirety. Stoney Brook claimed entitlement to summary judgment on several different grounds, including that Stoney Brook owed Andrews no duty—asserting that it did not create any dangerous condition, that it had no notice of any dangerous condition, and that the open and obvious danger rule applied—and that Andrews could not demonstrate that her injuries were proximately caused by Stoney Brook. Thomason also claimed entitlement to summary judgment on several grounds, asserting (among other things) that he could not be liable on a premises liability claim because he did not possess the premises in question and that, in any event, the open and obvious danger rule applied.

¶9    In response, Andrews argued that Thomason had not sought summary judgment on Andrews's negligence claim against him (just on the premises liability claim). In addition, Andrews asserted that genuine issues of material fact existed regarding whether Stoney Brook had notice of the snow pile, whether Thomason was a possessor of the premises, whether the open and obvious danger rule applied, and whether Andrews's injuries had been caused by the defendants' actions.

¶10    After full briefing and oral argument, the district court issued a written ruling granting both defendants' motions for summary judgment and dismissing all of Andrews's causes of action with prejudice. The court determined that Stoney Brook was not liable under premises liability because "there [was] no

evidence that Stoney Brook had actual or constructive knowledge of the snow on the sidewalk," and that Thomason was not liable under premises liability because he was not a possessor of the property in question. In the alternative, the court determined that the danger posed by the snow pile was open and obvious and that, therefore, neither Stoney Brook nor Thomason had breached any actionable duty toward Andrews. Finally, the court determined that Andrews's negligence claims failed because she had "fail[ed] to present evidence that either Stoney Brook or Thomason proximately caused the fall."

## ISSUE AND STANDARD OF REVIEW

¶11    Andrews now appeals, and she challenges the district court's summary judgment order. "We review a grant of summary judgment for correctness." *Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314.

## ANALYSIS

¶12    We first address Andrews's challenge to the district court's dismissal of her premises liability claims. Next, we address Andrews's challenge to the court's dismissal of her general negligence claims. For the reasons discussed, we conclude that the court correctly entered summary judgment in the defendants' favor on all of Andrews's claims.

### I. Premises Liability

¶13    We begin our analysis with a discussion of the legal principles that govern premises liability claims. After that, we address, in turn, Andrews's challenges to the district court's dismissal of her premises liability claims against each defendant.

A. Legal Background

¶14 "In Utah, a possessor of land may be subject to liability for injuries to invitees caused by a condition on the land if the possessor (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Downham v. Arbuckle*, 2021 UT App 121, ¶ 11, 502 P.3d 312 (cleaned up).[2] The term "possessor" generally encompasses those who have "control stemming from actual occupation, or from an immediate entitlement to actual occupation." *Hill v. Superior Prop. Mgmt.*

---

2. Utah law continues to distinguish between invitees and licensees. *See Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 14, 424 P.3d 866 ("When deciding whether a possessor of land owes a duty to another person, we must first determine whether that person is an invitee, a licensee, or a trespasser." (cleaned up)). "The status of invitee includes business visitors who are invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Hale v. Beckstead*, 2005 UT 24, ¶ 33, 116 P.3d 263 (cleaned up); *see also* Restatement (Second) of Torts § 332 cmt. a (A.L.I. 1965) (defining invitees as "those who enter for a purpose connected with the business of the possessor"). "Under Utah law, possessors of land owe a common-law duty of reasonable care to invitees that come onto their land." *Zazzetti v. Prestige Senior Living Center LLC*, 2022 UT App 42, ¶ 21, 509 P.3d 776. Given the procedural posture of this case, and based largely on the fact that Andrews was invited to the condominium complex by a friend who lived there, we assume, for purposes of our analysis, that Andrews was an invitee. *See Burton*, 2023 UT 14, ¶ 5 n.2 (noting that, in reviewing a grant of summary judgment, "we recite the facts in the light most favorable to the non-moving party" (cleaned up)).

*Services, Inc.*, 2013 UT 60, ¶ 22, 321 P.3d 1054 (cleaned up). The control characteristics of a possessor include "the right of exclusion" and "the right to take necessary precautions and make repairs." *Id.* ¶¶ 25–26 (cleaned up).

¶15　A possessor can be liable even in situations where a dangerous condition on the land is merely temporary. *See Jex v. JRA, Inc.*, 2007 UT App 249, ¶ 11, 166 P.3d 655, *aff'd*, 2008 UT 67, 196 P.3d 576. But in those situations, "a plaintiff can only recover if the defendant has notice of the dangerous condition." *Id.* In particular, "the following two conditions must be satisfied: (1) that the defendant had knowledge of the condition, that is, either actual knowledge or constructive knowledge because the condition had existed long enough that [the defendant] should have discovered it; and (2) that after such knowledge, sufficient time elapsed that in the exercise of reasonable care [the defendant] should have remedied it." *Id.* (cleaned up).

¶16　However, even when a dangerous condition exists on the land for which a possessor would ordinarily be liable, "[a] possessor of land is not liable to [the possessor's] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Hale v. Beckstead*, 2005 UT 24, ¶ 9, 116 P.3d 263 (quoting Restatement (Second) of Torts § 343A(1) (A.L.I. 1965)). This rule is referred to as the "open and obvious danger rule." *Id.* ¶ 14 (cleaned up). Despite the fact that the elements of the open and obvious danger rule are case-specific, our caselaw still categorizes the open and obvious danger rule as a duty-based inquiry.[3] *See Downham*, 2021 UT App 121, ¶ 12 ("The open and

---

3. The open and obvious danger "rule's steps present factual questions." *Downham v. Arbuckle*, 2021 UT App 121, ¶ 25, 502 P.3d 312; *see also Hale*, 2005 UT 24, ¶¶ 32, 37–38 (determining that a

(continued…)

obvious danger rule provides an exception to the possessor's duty of care."). Indeed, our supreme court has clarified that, "[i]f the open and obvious danger rule applies, then the land possessor owes no duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby." *Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 12, 445 P.3d 446. And we have stated that, under the open and obvious danger rule, "a possessor of land is not liable to . . . invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Downham*, 2021 UT App 121, ¶ 12 (cleaned up).

¶17 To be absolved of liability by the open and obvious danger rule, a defendant must satisfy "two key steps," both of which

---

grant of summary judgment was premature because the evaluation of whether the condition was open and obvious "depend[ed] upon the particular facts, which [the court did] not have in full"). Andrews posits that, because an open and obvious danger rule analysis often necessitates a factual investigation, the doctrine would be better analyzed under breach and causation, and not under duty. Given the recent trend in our caselaw toward categorizing duty inquiries as "categorical" questions and breach inquiries as "case-specific" questions, *see, e.g.*, *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 25, 275 P.3d 228; *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 15, 566 P.3d 777, Andrews has a point: perhaps our caselaw would be cleaner if we were to clarify that the open and obvious danger rule is better thought of as a breach inquiry rather than a duty inquiry. But be all of that as it may, our supreme court has consistently (and recently) analyzed the rule under the "duty" category, *see, e.g.*, *Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 12, 445 P.3d 446, and we are not in a position to overrule that precedent. We therefore proceed to analyze the rule under the duty umbrella, but we continue to recognize the fact-bound and case-specific nature of this unique inquiry, as we did in *Downham*. *See* 2021 UT App 121, ¶¶ 21–27.

---

present factual questions that will usually require a factfinder's attention. *Id.* ¶¶ 14, 26. The first step—the "open and obvious danger step"—asks whether the danger actually is open and obvious. *Id.* (cleaned up). This means that the danger must be "known or obvious to the plaintiff." *Zazzetti v. Prestige Senior Living Center LLC*, 2022 UT App 42, ¶ 23, 509 P.3d 776; *see generally Coburn*, 2019 UT 24, ¶¶ 23–26 (affirming a court's determination that orange netting which was lying across a paved trail constituted an open and obvious danger). If the danger would not be apparent to a reasonable person, then the open and obvious danger rule cannot operate to shield the defendant from liability.

¶18   The second step—known as the "anticipated harm step"—asks whether the defendant "should have anticipated harm despite the invitee's knowledge of the danger or the danger's obviousness." *Downham*, 2021 UT App 121, ¶¶ 13–14 (cleaned up). A possessor "is not relieved of the duty of reasonable care . . . if the possessor had reason to expect that the invitee would nevertheless suffer physical harm from the open and obvious danger." *Id.* ¶ 13 (cleaned up). "Such reason may arise, for example, where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [the invitee's] position the advantages of doing so would outweigh the apparent risk." *Id.* (cleaned up). Alternatively, such reason may arise "where there is reason to expect that the invitee would forget the danger, would become distracted from it, or would reasonably encounter the danger despite the risk." *Id.* (cleaned up).

¶19   Several cases illustrate the application of these steps. In some of these cases, Utah appellate courts have determined that—despite the fact-bound nature of the open and obvious rule's application—summary judgment is nevertheless appropriate. For example, in *Coburn*, our supreme court considered whether the open and obvious danger rule relieved a construction company of liability when the plaintiff encountered a fallen orange netting

fence on the ground, chose to step over it, tripped, and injured herself. 2019 UT 24, ¶¶ 3–6. The district court entered summary judgment in favor of the construction company, determining that the open and obvious danger rule—despite its fact-bound nature—applied as a matter of law and undisputed fact. *Id.* ¶ 4. Our supreme court affirmed, noting that, despite the fact that the incident occurred in a public area subject to a "heightened level of anticipation of harm," the netting did not present an extreme hazard, it was easily visible, and there was a path leading around the netting altogether. *Id.* ¶¶ 22–24. Crucial to the court's decision was the fact that the construction company could not have reasonably been expected to anticipate that the plaintiff would choose to encounter the obvious harm because she "could have avoided the netting by simply raising her foot" and stepping over it or by "walk[ing] around the netting." *Id.*

¶20    Similarly, in *Jensen v. Gardner*, this court affirmed a grant of summary judgment in favor of a possessor of land, holding that a balcony on which the plaintiff hit her head as she was running toward her car in the rain was an open and obvious danger. 2012 UT App 146, ¶¶ 2, 8–9, 279 P.3d 844. In that case, we determined that the danger was open and obvious and that the possessor could not have reasonably anticipated that anyone would choose to encounter the danger: "Even though [the possessor] certainly could have anticipated the rain, as a matter of law, [the possessor] could not reasonably have anticipated that [the plaintiff] would have been running by that balcony with her head down and looking at her feet rather than at the balcony." *Id.* ¶ 8.

¶21    In other cases, however, we have concluded that factual questions precluded entry of summary judgment regarding application of the open and obvious danger rule. In *Downham*, for instance, the plaintiff sustained injuries after a makeshift step outside her residence collapsed; the step was made out of a wooden pallet and was placed between the back door to her rented home and the backyard. 2021 UT App 121, ¶¶ 4–6. We

determined that the step was an open and obvious danger, as a matter of law and undisputed fact, because it was "wobbly" and the plaintiff was aware of its "unsafe" nature. *Id.* ¶¶ 28–32 (cleaned up). But we held that factual questions existed at the "anticipated harm step," which precluded the entry of summary judgment, because "a jury could reasonably find that [the landlord] either should have anticipated, or in fact did anticipate, that his tenants would use the back door and whatever back step had been provided as a means of accessing that backyard." *Id.* ¶ 34. Important to our conclusion was the determination that a jury might reasonably find that, "to a reasonable person in [the tenant's] position the advantages of [encountering the open and obvious danger] would outweigh the apparent risk." *Id.* ¶ 35 (cleaned up).

¶22 And in *Zazzetti*, we discussed the open and obvious danger rule in a factual situation similar to the one presented here: a slip-and-fall on snow occurring on a sidewalk outside of a housing complex. 2022 UT App 42, ¶¶ 2–3, 39. In that case, the plaintiff was walking from the parking lot of her apartment complex to her unit when "she slipped and fell on the snowy and icy sidewalk leading from the parking lot to the building." *Id.* ¶ 3. We noted that the district court in that case had denied the defendant's "motion for a directed verdict on the duty question, specifically crediting [the plaintiff's] argument that, even if the danger posed by the snowy sidewalk was open and obvious, [the defendant] would nevertheless retain a duty of reasonable care toward [the plaintiff] if [the defendant] should have anticipated that a tenant might slip and fall on a snowy sidewalk." *Id.* ¶ 36. The record in *Zazzetti*—unlike the record in this case—contained no indication that only part of the sidewalk contained snow. *See id.* ¶ 9 (contrasting the plaintiff's position—that the sidewalk was "icy" and that she "had not seen anyone shoveling or spreading ice melt" in the days leading up to her fall—with the defendant's position—that it had "plowed and shoveled several times in the days leading up to the incident, including twice on the day of the

accident itself"). Given those facts, where the plaintiff presented evidence that the entire sidewalk was icy and that it was the only way into her building, we noted that the plaintiff had a "rather strong argument that—even assuming the danger was open and obvious—[the defendant] should have anticipated that a tenant would reasonably choose to encounter snow and ice on the sidewalk, there being no other reasonable way to walk back to the apartment from the parking lot." *Id.* ¶ 36.

B.      Merits of the Individual Claims

¶23     With these principles in mind, we now consider whether the open and obvious danger doctrine applies here, as a matter of law and undisputed fact, to absolve Stoney Brook and Thomason of liability on Andrews's premises liability claims.

1.      Stoney Brook

¶24     We begin with the first step: whether the snow pile was open and obvious to Andrews. *See Zazzetti*, 2022 UT App 42, ¶ 23; *Downham*, 2021 UT App 121, ¶ 26. Even drawing all factual inferences in Andrews's favor, we conclude that the snow pile was open and obvious as a matter of law. The photographic evidence is quite compelling, indicating that the snow pile was (or should have been) obvious to any reasonable observer. *See supra* ¶ 5. And Andrews herself acknowledges that she is "sure" that she "could see the sidewalk" and that she "saw the snow." Additionally, Andrews had previously slipped and fallen in icy conditions and was therefore aware of the dangers that snowy weather poses. *See Downham*, 2021 UT App 121, ¶ 28 (determining that a wooden pallet presented a known and obvious danger because the plaintiff was aware that the pallet was "wobbly and unsafe"). Given these facts, the snow pile was indeed open and obvious as a matter of law.

¶25     We move, therefore, to the "anticipated harm step," and consider whether Stoney Brook should have nonetheless

anticipated that Andrews would be harmed despite the snow pile's open and obvious nature. *See id.* ¶¶ 14, 26. We determine that, as a matter of law and undisputed fact, Stoney Brook could not have reasonably anticipated that Andrews would choose to encounter, and perhaps become injured by, this particular snow pile. Key to our analysis are the following facts: the snow pile covered only a portion of the sidewalk, and there existed an obvious corridor of cleared and snow-free concrete that Andrews could have used to simply walk around the snow pile. Indeed, Andrews acknowledges that nothing "prevented [her] from going down the" cleared side of the sidewalk. And while she implies that she might have been distracted, the only thing she identifies that might have distracted her was looking toward the building instead of the sidewalk; she identifies nothing specific that might have distracted her from identifying this particular hazard. Under these circumstances, Stoney Brook had no reason to anticipate that Andrews—or anyone else similarly situated—might suffer an injury from the snow pile despite its obvious danger.

¶26 This conclusion is consistent with the caselaw described earlier. The facts of this case are far more similar to the facts of *Coburn* and *Jensen* than they are to the facts of *Downham* and *Zazzetti*. In *Coburn*, our supreme court affirmed the entry of summary judgment because the plaintiff had an easy way to avoid the obviously dangerous condition: she could have simply picked up her feet and stepped over the netting, or she could have walked around it on a clear footpath. 2019 UT 24, ¶¶ 22–24. And in *Jensen*, we affirmed the entry of summary judgment because the balcony on which the plaintiff struck her head was obvious and could have easily been avoided, despite the fact that the plaintiff might have been distracted by rain. 2012 UT App 146, ¶ 8. Thus, in cases where the undisputed facts show that the danger is obvious but that there is also a clear and easily accessible way around the danger, the possessor of land has no reason to anticipate that anyone would encounter, and become injured by,

the dangerous condition, and the open and obvious danger rule can be applied as a matter of law.

¶27 For similar reasons, this case is readily distinguishable from *Downham* and *Zazzetti*, two cases in which factual questions prevented the entry of summary judgment (or directed verdict) regarding the anticipated harm step. In those cases, while the hazards were obvious, they were located in places where individuals were essentially required to be (the only walkway into a building, and the only entrance into the back of a residence) and where it was not clear that there was a reasonable alternative path. *See Zazzetti*, 2022 UT App 42, ¶ 36; *Downham*, 2021 UT App 121, ¶ 35. In those cases, we determined that a factfinder needed to grapple with the question of whether the possessor should have reasonably anticipated that individuals would choose to encounter (and might be injured by) the hazard, despite its obvious danger.

¶28 On this record, the open and obvious danger rule applies as a matter of law and undisputed fact. This particular snow pile was open and obvious to anyone, including to Andrews, and there was an easy way around the snow pile. Thus, in this case, Stoney Brook could not have reasonably anticipated that individuals would be injured by the snow pile. As our supreme court stated in *Coburn*, possessors of land "may reasonably assume that members of the public will not be harmed by known or obvious dangers which are not extreme, and which any reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid." 2019 UT 24, ¶ 18 (cleaned up). "And this is true particularly where a reasonable alternative way is open to the visitor, known or obvious to him [or her], and safe." *Id.* (cleaned up).

¶29 We therefore discern no error in the district court's conclusion that the open and obvious danger rule applies in this case, or in the court's concomitant conclusion that summary

judgment in favor of Stoney Brook on Andrews's premises liability claim was therefore proper.

2.      Thomason

¶30    We similarly discern no error in the district court's dismissal, on summary judgment, of Andrews's premises liability claim against Thomason. Our analysis regarding applicability of the open and obvious danger rule applies to Andrews's premises liability claim against Thomason in the same way it applies to her claim against Stoney Brook. In addition, Andrews has not demonstrated that Thomason—a mere resident of the complex and member of the condominium association—is a "possessor" of the common areas of the complex and therefore a person against whom a premises liability claim may be stated. For these reasons, we likewise affirm the district court's order dismissing Andrews's premises liability claim against Thomason.

## II.  Negligence

¶31    Next, we consider Andrews's challenge to the district court's order dismissing her negligence claims against the defendants. As in the previous section, we begin with a discussion of the applicable law, and we then transition into a specific analysis of Andrews's negligence claims against each defendant.

A.      Legal Background

¶32    To succeed on a negligence claim, a plaintiff must show "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 14, 566 P.3d 777 (cleaned up). Andrews asserts that both Stoney Brook and Thomason owed her a duty of reasonable care and that they breached that duty, which caused her to sustain damages.

¶33    Both Stoney Brook and Thomason assert that the open and obvious danger rule operates to relieve them of liability, not only with regard to Andrews's premises liability claims but also with regard to her general negligence claims. As discussed above, we have already determined that the open and obvious danger rule applies in this case as a matter of law; Stoney Brook and Thomason assert that this conclusion should lead to the dismissal of not only the premises liability claims against them but also the general negligence claims against them.

¶34    Andrews takes a different position. She asserts that the open and obvious danger rule applies *only* to premises liability claims and that it cannot operate to shield defendants from liability for general negligence.

¶35    With this dispute, the parties raise an issue of law that, as far as we are aware, has not yet been squarely decided in Utah. We invited the parties to submit supplemental briefs on this issue; Andrews and Thomason did so, and we appreciate their efforts. After reviewing those briefs and analyzing the approaches taken by some of our sister states, we conclude that the open and obvious danger rule can apply to general negligence claims, but only if the negligence complained of concerns a dangerous condition on land.

¶36    In particular, we find persuasive the approach taken by the courts of Illinois. *See, e.g., Hutson v. Pate*, 2022 IL App (4th) 210696, ¶ 60, 216 N.E.3d 1085; *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 66, 115 N.E.3d 282; *Park v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶¶ 6–12, 18–19, 27, 960 N.E.2d 764; *see also Serrano v. Menard, Inc.*, 671 F. Supp. 3d 877, 884 (N.D. Ill. 2023) (applying Illinois law). In *Park*, the court applied the open and obvious danger rule in dismissing claims against both the possessor of the land in question—the owner of a train station—and a separate defendant—a company "responsible for rail traffic control" at that station. 2011 IL App

(1st) 101283, ¶¶ 1, 4, 18, 27. In that case, the plaintiff sued both the station owner and the traffic control company for negligence, among other things, after her son was killed by an oncoming train. *Id.* ¶¶ 1–6. The court determined that "the danger of stepping in front of a moving train is open and obvious." *Id.* ¶ 18. And the court applied this reasoning to dismiss negligence claims filed against not only the train station owner, but also against the traffic control company, stating that its "findings concerning [the owner's] duty, or lack thereof, apply with equal force to [the traffic control company]." *Id.* ¶ 27.

¶37   Later, in *Winters*, another Illinois appellate court applied the open and obvious danger doctrine to negligence claims, and it did so on facts similar to those at issue here. 2018 IL App (4th) 170669, ¶¶ 54–57, 63–66. In that case, the plaintiff was walking from his apartment to the laundry facility of his apartment complex when he encountered a "large mound of snow" on the sidewalk. *Id.* ¶ 1. The pile had apparently been created by a snow removal company with whom the apartment complex contracted to clear the parking lots, but not necessarily the sidewalks. *Id.* The snow removal company, in the process of clearing the parking lots, had pushed snow onto the sidewalk. *Id.* The plaintiff began to "navigate around the snow pile," slipped, and fell. *Id.* The plaintiff sued both the apartment complex and the snow removal company, asserting that the snow removal company "owed plaintiff a duty that it breached when it negligently placed the pile of snow on the sidewalk." *Id.* The plaintiff appealed the lower court's grant of both defendants' motions for summary judgment; in granting the motions, the court concluded that the snow pile was an open and obvious danger. *Id.* ¶¶ 39–40. The appeals court affirmed. *Id.* ¶¶ 82–83. In making its decision, the court noted that the plaintiff conceded that he could clearly see the snow pile and chose to walk on it anyway, despite the known availability of an alternative route to the laundry facility. *Id.* ¶¶ 64–66.

¶38    And in *Hutson*, the court continued to apply the open and obvious danger rule to at least some negligence claims, and this time it offered additional reasoning. 2022 IL App (4th) 210696, ¶¶ 42–60. The court first noted—citing *Winters* and other cases—that Illinois courts had long held that "defendants are entitled to raise the open-and-obvious rule" as a defense "to either an ordinary negligence claim or a premises liability claim." *Id.* ¶ 53 (cleaned up). However, the court explained that the use of the open and obvious danger rule in ordinary negligence cases had been generally limited to a "fact pattern sounding in traditional premises liability—in other words, a fact pattern where a condition on the land is both the cause and instrument of a plaintiff's injury." *Id.* ¶ 56. Accordingly, the court clarified that "the open and obvious doctrine applies in ordinary negligence cases but only when the alleged cause of injury is a condition on the land instead of a defendant's active negligence." *Id.* ¶ 42. It then proceeded to consider whether the action that caused the injury—pulling on a garden hose and causing a minor to fall and break her ankle—was sufficiently related to a condition on the land to warrant application of the open and obvious danger doctrine. *Id.* ¶ 62. In the end, the court concluded that the open and obvious danger rule did not apply to the facts presented because the injured party "did not simply trip over a hose . . . but was tripped by the direct action of [the tortfeasor] pulling the hose." *Id.* The court also offered a helpful way to frame the application and limitation of the open and obvious danger doctrine: "[T]he proper question to ask is not whether the doctrine applies to ordinary negligence or premises liability claims, but whether the cause of injury is a condition on the land or the active negligence of the defendant." *Id.* ¶ 60.

¶39    This approach is sensible and appropriately balances the competing interests involved. We consider it the best of the

available options of which we are aware.[4] Andrews's position—limiting application of the open and obvious danger rule to only premises liability claims—would render the rule an effective nullity, because plaintiffs could easily plead around it simply by pleading a negligence claim rather than a premises liability claim. And a competing position taken by at least one other state—refusing to allow any general negligence claims "if the plaintiff's injury arose from an allegedly dangerous condition on the land," *see Bowman v. Walker*, 986 N.W.2d 419, 423 (Mich. Ct. App. 2022) (cleaned up)—goes too far in the other direction, because it fails to properly distinguish between the two distinct tort theories, *see Senkosky v. Bistro 412 LLC*, 2022 UT App 58, ¶¶ 24–25, 512 P.3d 477 (treating premises liability and ordinary negligence as distinct tort theories), and because it doesn't allow non-possessors to be held liable for their role in creating dangerous conditions on other people's land, even if those conditions aren't open and obvious.

¶40    Thus, we opt to follow the approach taken by the appellate courts of Illinois, and we endorse the *Hutson* court's statement that "the open and obvious [danger rule] applies in ordinary negligence cases but only when the alleged cause of injury is a

---

4. While we are aware of no Utah caselaw directly on point, we draw at least some guidance from *Coburn*, a case in which the plaintiff filed "a negligence action" (as opposed to a premises liability action) against a construction company hired "to install a water pipeline" in "a recreational area." 2019 UT 24, ¶¶ 2, 4. Our supreme court did not discuss whether the company was an owner or possessor of the land in question, nor did it grapple with the issue we concern ourselves with here, namely, whether and to what extent the open and obvious danger rule can be applied to defend against general negligence claims. *See id.* ¶¶ 17–27. But the court *did* apply the rule in a case in which the claim asserted was apparently a general negligence claim, and it allowed the rule to be utilized by a construction company that may or may not have been a possessor of the land in question. *See id.*

condition on the land instead of a defendant's active negligence," 2022 IL App (4th) 210696, ¶ 42.

B.      Merits of the Individual Claims

¶41     With these principles in mind, we now turn to an analysis of Andrews's challenge to the district court's order dismissing her negligence claims against Stoney Brook and Thomason.

1.      Stoney Brook

¶42     In her negligence claim against Stoney Brook, Andrews asserts that Stoney Brook owed her "a duty to act in a reasonable and prudent manner" and that it "breached that duty by not discovering and or cleaning up the ice in the walkway." This is essentially the same thing Andrews asserts in stating her premises liability claim against Stoney Brook: that Stoney Brook "failed to use reasonable care to keep the property safe and suitable for its intended use or free of defects or dangerous conditions." Indeed, we recently stated that the duty owed by a possessor of land to its invitees is simply "a duty to exercise reasonable care—whatever that might entail in a particular case—to keep its premises safe for invitees." *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 18, 566 P.3d 777.

¶43     Clearly, here, the asserted cause of injury Andrews refers to in her negligence claim against Stoney Brook involves "a condition on the land" and not the "active negligence of the defendant." *See Hutson*, 2022 IL App (4th) 210696, ¶ 42. She does not allege that Stoney Brook was actively doing anything at the time of her injury to cause her fall; rather, she asserts that Stoney Brook breached its duty of reasonable care "by not discovering . . . or cleaning up the ice in the walkway." We note that, in Illinois, "conditions on the land" for purposes of this analysis include "piles of snow," as well as things like "fire, height, . . . bodies of water," "sidewalk defects," "store posts," "moving trains," "electrified third rails," "power wires," and "ladders." *Id.* ¶ 57. By

contrast, Illinois courts have concluded that "conditions on the land do *not* include carrying bundles of shingles, partying by social guests, operating a pulley device, or mixing grout," *id.* ¶ 58 (cleaned up), nor do they include "pulling [a] hose," *id.* ¶ 62.

¶44 Viewed in this light, we are quite comfortable concluding that the allegations Andrews makes against Stoney Brook related to her general negligence claim concern a condition on the land. Accordingly, Stoney Brook may use the open and obvious danger rule as a defense to Andrews's general negligence claim, and—for the reasons already stated, *see supra* Part I—that rule applies here as a matter of law and undisputed fact. For these reasons, the district court did not err in dismissing Andrews's general negligence claim against Stoney Brook.

2.    Thomason

¶45 The question is somewhat closer regarding Andrews's general negligence claim against Thomason, but in the end we reach the same result: Andrews's general negligence claim against Thomason also asserts injury arising from a condition on the land (rather than from Thomason's active negligence), and therefore Thomason may also use the open and obvious danger rule as a defense to Andrews's general negligence claim against him.[5]

---

5. Andrews asserts that Thomason failed to preserve any argument that her general negligence claim against him was subject to dismissal on summary judgment. But this assertion fails because the district court reached the question and did indeed dismiss Andrews's general negligence claim against Thomason on summary judgment. *See Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (stating that "the district court's decision to take up the question conclusively overcame any objection that the issue was not preserved for appeal" (cleaned up)). We may therefore review the

(continued…)

¶46   Andrews points out that Thomason created the hazard through an affirmative act, namely, brushing snow off his car and onto the sidewalk. But this affirmative act—even assuming it can be categorized as "active negligence," *see Hutson*, 2022 IL App (4th) 210696, ¶ 42—did not directly cause the injury. Stated another way, the snow Thomason brushed off his car did not strike Andrews as she walked by, causing her to fall. Indeed, Andrews wasn't even present when Thomason brushed the snow onto the sidewalk, and Thomason made no action in the moment that caused Andrews to fall. In fact, the pile had been there for eight hours before Andrews encountered it. Thus, the cause of the injury was a then-stagnant condition on the land, regardless of how that condition came to exist. Indeed, Andrews does not allege that she was injured by the affirmative act of brushing snow off a car; instead, in her negligence claim, she alleges that "Thomason negligently created a hazardous and dangerous condition" on the land "by removing snow off his car and onto the walkway and not cleaning up the ice in the walkway."

¶47   The facts here are most analogous to those in *Winters*; in that case, as here, the alleged tortfeasor pushed snow onto the sidewalk, which was later encountered by the plaintiff, causing the plaintiff to slip and fall. *See* 2018 IL App (4th) 170669, ¶ 1. The court determined that the open and obvious danger rule applied to a negligence claim against the non-possessor defendant who was alleged to have created the snow pile. *Id.* ¶¶ 63–66.

¶48   Accordingly, we conclude that Andrews's general negligence claim against Thomason asserts that her injuries were the result of a "condition on the land," as opposed to the "active

---

court's dismissal order, and we retain the discretion to affirm that order on any ground apparent in the record. *See In re A.B.*, 2022 UT 39, ¶ 45, 523 P.3d 168 ("An appellate court has discretion to affirm a judgment on an alternative ground if it is apparent in the record." (cleaned up)).

negligence of" Thomason. *See Hutson*, 2022 IL App (4th) 210696, ¶ 42. In this situation, Thomason may utilize the open and obvious danger rule as a defense to Andrews's general negligence claim against him, and—as already noted, *see supra* Part I—that rule applies here as a matter of law.

CONCLUSION

¶49     For the reasons discussed, we conclude—in harmony with the appellate courts of Illinois—that the open and obvious danger rule can be utilized as a defense not only to premises liability claims, but also to general negligence claims so long as the alleged cause of injury is a condition on the land and not a defendant's active negligence. And we conclude that, as a matter of law and undisputed fact, the open and obvious danger rule applies in this case, because the snow pile that caused Andrews's injuries was an open and obvious danger, and because neither Stoney Brook nor Thomason could have reasonably anticipated that Andrews (or others) would choose to encounter it under the circumstances. The district court therefore committed no error in dismissing all of Andrews's causes of action against each defendant.

¶50     Affirmed.

———————